**NO. 25-8154**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee ,**

**v.**

**BRYANT KAZUYOSH IWAI,**

**Petitioner-Appellant.**

---

APPEAL OF DENIAL OF MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND
THE FIRST STEP ACT OF 2018
FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF HAWAII
CRIM. NO. 1:15-cr-00723-DKW-1

---

# OPENING BRIEF FOR PETITIONER-APPELLANT

---

**BRYANT KAZUYOSH IWAI**
**REG. NO. 07832-122**
**FMC ROCHESTER**
**FEDERAL MEDICAL CENTER**
**P.O. BOX 4000**
**ROCHESTER, MN 55903**
**Appearing *Pro Se***

# TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

STATEMENT OF JURISDICTION . . . . . . . . . . 1

STATEMENT OF ISSUE . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . 1-9

ARGUMENT . . . . . . . . . . 9

I. WHETHER THE DISTRICT COURT ERRED IN DENYING IWAI'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND THE FIRST STEP ACT OF 2018 . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . 25

CERTIFICATE OF SERVICE . . . . . . . . . . 25

# TABLE OF AUTHORITIES

**Cases** **Page**

*Bailey v. United States*, 516 U.S. 137 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Dillon v. United States*, 560 U.S. 817, 824 (2010) . . . . . . . . . . . . . . . . . . . . . . . 10

*Estelle v. Gamble*, 429 U.S. 97 (1976)(same) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Haines v. Kerner*, 404 U.S. 519 (1972)(same). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hebbe v. Pliler*, 611 F.3d 1202 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ring v. Arizona*, 536 U.S. 584, 609 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021) . . . . . . . . . . . . . . . . 15-17, 20

*United States v. Belcher*, 259 F.3d 1073 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . 19

*United States v. Bennett*, 664 F.3d 997, 1015 (5th Cir. 2011) . . . . . . . . . . . . . . . . . .

*United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022) . . . . . . . . . . . 15-17, 20-21, 24

*United States v. Gorion*, 2022 WL 867764, at *3 (D. Haw. Mar. 23, 2022). . . . . 13

*United States v. Hirano*, 2022 WL 1540230, at *3 (D. Haw. May 16, 2022). 12-13

*United States v. Kazanowski*, 2020 WL 3578310, at *4 (D. Haw. July 1, 2020) . 12

*United States v. Johnson*, No. 15-cr-125, 2020 WL 4340899
(N.D. Cal. July 28, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Jones*, 482 F. Supp. 3d 969 (N.D. Cal. 2020) . . . . . . . . . . . . . . . 22

*United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) . . . . . . . . . . . . . . . 11, 13

*United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . 16, 19

*United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . 10

*United States v. Ramirez-Rangel*, 103 F.3d 1501 (9th Cir. 1997). . . . . . . . . . . 19-20

*United States v. Ransom*, 859 F. App'x 58, 59 (9th Cir. 2021). . . . . . . . . . . . . 11, 13

*United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). . . . . . . . . . . . 11

*United States v. Trask*, 859 F. App'x 38, 38–39 (9th Cir. 2021) . . . . . . . . . . . . . . 11

*United States v. Valle-Rivera*, 920 F.3d 1125 (8th Cir. 2019) . . . . . . . . . . . . . 16-17

*United States v. Wright*, 46 F.4th 938, 950 (9th Cir. 2022). . . . . . . . . . . . . . . . . . . 21

*Walton v. Arizona*, 497 U.S. 639, 650 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Watson v. United States*, 552 U.S. 74 (2007). . . . . . . . . . . . . . . . . . . . . . . . . 18-21

**Statutes, Rules and Guidelines**

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18-21

18 U.S.C. § 924(c)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18

18 U.S.C. § 924(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 924(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3142(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 21-22

18 U.S.C. § 3553(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

18 U.S.C. § 3582 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 3582(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18 U.S.C. § 3582(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 3582(c)(1)(A) . . . . . . . . . . . . . . . . . . . . 1, 9, 11-15, 17, 18, 20-22, 24

18 U.S.C. § 3582(c)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

18 U.S.C. § 3582(c)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

21 U.S.C. § 841(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

21 U.S.C. § 853(p) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8-9

28 U.S.C. § 2461(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S.S.G. § 1B1.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14-15, 17

U.S.S.G. § 3B1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S.S.G. § 3E1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S.S.G. § 3E1.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S.S.G. § 3E1.1(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

U.S.S.G. § 5K1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23

U.S.S.G. Amendment 814 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16-17, 21

U.S.S.G. Amendment 821 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Federal Rule of Criminal Procedure 35(b). . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8, 23

of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *Id.* Count 4s charged Iwai with Possession of A Firearm in Furtherance of A Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (c)(2). *Id.* The First Superseding Indictment also contained Forfeiture Allegations pursuant to 18 U.S.C. § 924(d), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c). *Id.*

On August 30, 2016, a Change of Plea Hearing was held and Iwai entered a plea of guilty to Counts 1s and 4s of the First Superseding Indictment, pursuant to a written Plea Agreement. See Docs. 120, 123.

On January 9, 2018, Iwai was sentenced to a total term of 196 months' imprisonment, 5 years of Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $200. See Docs. 158, 159.

On January 12, 2018, Iwai filed a timely notice of appeal as permitted pursuant to his conditional plea agreement which allowed him to appeal the denial of his pretrial Motion to Suppress. See Docs.123, 161.

On July 23, 2019, Iwai's convictions were affirmed by the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"). See Doc. 186.

Iwai's subsequent petitions to the Ninth Circuit for hearing en banc and to the United States Supreme Court for certiorari were denied. See Docs. 198, 202, 203, 217.

On August 12, 2022, Iwai filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See Doc. 239.

On April 20, 2023, the district court issued an Order denying Iwai's § 2255 Motion. See Doc. 253. Iwai did not appeal the district court's Order.

On August 26, 2025, Iwai filed a Motion for Compassionate Release, which was denied on December 19, 2025. See Docs. 255, 263.

On December 29, 2025, Iwai filed a Notice of Appeal re: denial of his Motion for Compassionate Release. See Doc. 264.

On January 5, 2026, Iwai filed an Application to Proceed In *Forma Pauperis,* which was denied on January 22, 2026. See Docs. 269, 270.

On March 11, 2026, Iwai filed a Motion to Proceed In *Forma Pauperis,* which was granted on April 23, 2026. See Doc. 272.

April 23, 2026, the Ninth Circuit granted Iwai's Motion to Proceed In *Forma Pauperis*, set the briefing schedule, and warned that failure to timely file the Opening Brief could result in dismissal for failure to prosecute. See ROA.[2] 6.

On June 29, 2026, the Ninth Circuit ordered Iwai to file the overdue Opening Brief and a Motion to File A Late Brief within fourteen days or face automatic dismissal of the appeal for failure to prosecute. See ROA. 7.

### B. Statement of the Relevant Facts

#### 1. Offense Conduct

On August 4, 2015, United States Postal Inspectors intercepted a Priority Mail medium flat rate parcel measuring approximately 14"x 14"x14" and weighing approximately 9.5 pounds. The parcel was addressed to "98-288 Kaonohi Street, Apt. 2303, Aiea, HI 96701," and bore a return address of "5201 Dean Martin Drive, Las Vegas, NV 89118," with U.S. postage in the amount of $84.85 and USPS tracking number EK877653685US (the "subject parcel"). Although the shipping label did not list a recipient's name, the name "Bryant Iwai" was handwritten on the parcel.

A narcotic detection dog screened the parcel and positively alerted to the presence of a controlled substance. Later that same day, federal agents executed a search warrant on the subject parcel, resulting in the seizure of approximately 2,760 grams of methamphetamine, as confirmed by

[2] "ROA." refers to the record on appeal in No. 25-8154, which is immediately followed by the page number.

DEA laboratory analysis. Additional contents of the parcel included bubble wrap, food saver bags, a "Golden Nugget" sweater, and a white-striped pillowcase.

On August 5, 2015, agents obtained a warrant authorizing the placement of a tracking device and beeper within the subject parcel to facilitate a controlled delivery. Investigators removed the methamphetamine and replaced it with pseudo-methamphetamine, a monitoring device to detect when and where the parcel was opened, and dusted the parcel's interior contents with fluorescent powder visible under ultraviolet light. They also placed a one-gram sample of actual methamphetamine inside the parcel before re-sealing it with its original container and contents.

At approximately 11:00 a.m. on August 5, 2015, federal agents and task force officers established surveillance near 98-288 Kaonohi Street, Unit #2303, Aiea, Hawaii — the Pearlridge Square condominium tower ("subject residence"). Around 11:48 a.m., a United States Postal Inspector, posing as a mail carrier, used the building's call box to contact Unit #2303. A male who answered, later identified as Bryant Iwai, instructed the carrier to leave the parcel at the front desk with the manager, stating he was "on the road."

At approximately 11:58 a.m., the parcel was left with the building manager. Shortly thereafter, at approximately 12:56 p.m., surveillance agents observed Iwai approach the front desk, engage in a brief conversation with the manager, and retrieve the subject parcel. Iwai was then seen entering the elevator with the parcel and elevator toward his apartment, Unit #2303.

At approximately 3:15 p.m., the beeper inside the parcel signaled that it had been opened inside Unit #2303. Agents and task force officers immediately moved to the apartment, knocked on the door, and announced, "Police!" No one responded. Through the peephole, agents observed movement inside. Repeated announcements were made, including directly addressing "Bryant," but no one opened the door. Agents then heard sounds consistent with plastic or paper rustling coming from inside.

At approximately 3:17 p.m., agents forcibly entered Unit #2303 to secure the premises and prevent the destruction of evidence while obtaining a search warrant. [ER 202-204.] Iwai was found exiting the kitchen area and was detained. The subject parcel was located in the living room, appearing unopened but with a cut on one corner. In plain view, agents observed a Smith & Wesson .38 caliber revolver and several ziplock bags containing what appeared to be methamphetamine.

At approximately 3:25 p.m., Iwai voluntarily signed a written consent to search his apartment. Shortly thereafter, when agents asked to speak with him, Iwai initially stated he understood why they were there but requested an attorney. All questioning ceased, and agents prepared to transport him to the Hawaii Airport Task Force (HATF) offices for processing. While being escorted, Iwai requested that agents retrieve his cell phone from the apartment, which they did.

During the transport, Iwai spontaneously stated he wished to cooperate, but no questioning took place en route. After arriving at HATF, Iwai was again advised of his constitutional rights, which he acknowledged. At approximately 4:30 p.m., Iwai signed a DEA "Advice of Rights and Waiver of Rights" form, confirming he understood his rights and voluntarily agreed to speak with agents. He declined to have the interview recorded.

Iwai thereafter provided a detailed statement, which was summarized by agents and signed and approved by him at approximately 7:52 p.m. During the interview, Iwai positively identified a photograph of his methamphetamine source in Las Vegas and made a consensually monitored and recorded phone call to that individual, in the presence of agents.

A subsequent consent search of Unit #2303 revealed over 6,000 grams of crystal methamphetamine, confirmed by DEA laboratory analysis, hidden in various locations throughout the apartment. See PSR ¶¶ 8-9. In addition, agents recovered more than $32,000 in U.S. currency, found in a kitchen cabinet and the living room, along with a firearm, digital scale, drug ledger, and plastic baggies commonly used for drug distribution. *Id.*

2. Plea Proceeding

On August 30, 2016, a Change of Plea Hearing was held before Judge Helen Gillmor. See Doc. 120. Iwai pleaded guilty on Counts 1s and 4s of the First Superseding Indictment, pursuant to a conditional Plea Agreement. See Doc. 123. During the hearing, Iwai confirmed that he had discussed his case with Panagakos, understood their discussions, and was satisfied with the representation he had received. See Doc. 170. Iwai further affirmed that he had reviewed and understood the proposed plea agreement and that no additional promises or assurances had been made to induce him to plead guilty. *Id.* at 6:4–17.

3. Sentencing Proceeding

On January 9, 2018, a Sentencing Hearing was held before Judge Derrick K. Watson. See Doc. 158. At sentencing, the Court sentenced Iwai to 136 months as to Count 1s and 60 months as to Count 4s, to run consecutively, for a total term of 196 months' imprisonment; followed by 5 years of Supervised Release. See Doc. 159. The Court also ordered payment of a Mandatory Special Assessment Fee of $200. *Id.* On January 12, 2018, Iwai timely filed a Notice of Appeal. See Doc. 161.

4. Appeallate Proceeding

On Appeal, Iwai primarily contested the district court's denial of his motion to suppress evidence. On July 23, 2019, the Ninth Circuit affirmed the district court's rulings, finding, among other things, that the record supported a conclusion that law enforcement's warrantless entry into Iwai's apartment was justified by exigent circumstances. See Doc.186 at 3–13.

Iwai subsequently filed a petition for a writ of certiorari with the United States Supreme Court. On January 13, 2021, the Supreme Court denied the petition. See Doc. 217. As a result, Iwai's judgment of conviction became final.

While Iwai's direct appeal was still pending, the government filed a motion on April 19, 2019, pursuant to Federal Rule of Criminal Procedure 35(b), seeking a

reduction in Iwai's sentence based on his substantial assistance ("Rule 35 Motion"). See Doc. 173. The government argued that Iwai's willingness to testify against Cornelio contributed to Cornelio's decision to plead guilty to a drug offense, for which Cornelio was sentenced to 135 months' imprisonment. *Id.* at 3–7. The government requested an 18-month reduction in Iwai's sentence. *Id.* at 8–9.

The government further explained that the Rule 35 Motion was filed more than one year after Iwai's sentencing due to administrative oversights that resulted in the motion being "lost in the shuffle." *Id.* at 9–10. In response, Iwai requested a greater reduction of 36 months. See Doc. 175.

On May 23, 2019, the district court held a hearing on the Rule 35 Motion. See Doc. 178. After argument, the Court denied the motion as untimely. See Doc. 180. The Court explained that, under Rule 35(b), a motion for sentence reduction must generally be filed within one year of sentencing, subject to only three limited exceptions. *Id.* at 3:17–22. Although the government invoked one of those exceptions, the Court found that the exception "clearly" did not apply because the information Iwai provided was "useful" to the government within the one-year period following his sentencing. *Id.* at 3:17–25, 5:12–8:3. See also Fed. R. Crim. P. 35(b)(2)(B) (allowing for a delayed filing only if information provided within one year "did not become useful to the government until more than one year after sentencing").

Government counsel also argued that the Court should apply an "interest of justice" analysis to excuse the late filing, noting that there was "no excuse" for the government's delay and that Iwai's counsel—still Breiner at the time—had contacted the government on "at least two occasions" to inquire about the motion's status. The Court rejected this argument, reiterating that the time limits under Rule 35 are jurisdictional and therefore not subject to equitable considerations.

Finally, the Court observed that even if the Rule 35 Motion had been timely filed, it likely would not have been granted. The Court noted that the substantial assistance provided by Iwai had already been considered at sentencing, when it granted a three-level downward departure under USSG § 5K1.1.

On June 3, 2019, Iwai appealed the denial of the Rule 35 Motion. See Doc. 181. However, on July 13, 2020, the Ninth Circuit dismissed the appeal for lack of appellate jurisdiction, concluding that Iwai had failed to show that the district court's denial of the Rule 35 Motion constituted a "violation of law," or that the government's failure to timely file the motion was motivated by unconstitutional considerations. See Doc. 201.

5. Postconviction Proceeding

On August 8, 2022, Iwai, proceeding without counsel, mailed to the Court a copy of his § 2255 Motion. See Doc. 239. Therein, Iwai argued that, in various ways set forth in more detail below, each of the five attorneys who represented him in this criminal case and subsequent appeal rendered ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).

Iwai also argued that Count 4, referred to by Iwai as the "firearm" or "gun" charge, violated his constitutional rights, the Court erred in denying the Rule 35 Motion, and his 196-month sentence constitutes "cruel and unusual punishment" in violation of the Eighth Amendment. On November 14, 2022, the government filed an opposition to the Section 2255 Motion. See Doc. 245. On March 14, 2023, Iwai placed in the prison mailing system his reply in support of the § 2255 Motion. See Doc. 252.

On April 20, 2023, the district court issued an Order (1) Denying Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence; and (2) Denying Certificate of Appealability. See Doc. 253.

In its Order, the district court held that Iwai failed to show that his attorneys' performance was deficient in any of the manners he identified. Further, even if deficient, Iwai has failed to show any prejudice from his attorneys' alleged conduct. Therefore, the motion to vacate [Doc. 239] is denied. In addition, because reasonable jurists would not debate the denial of the motion to vacate, a certificate of appealability is also denied. Iwai did not appeal the denial of his § 2255 Motion.

Since the denial of his § 2255 Motion, Iwai has not filed any other postconviction pleadings.

## ARGUMENT

As a preliminary matter, Iwai respectfully requests that this Court be mindful that pro se litigants are entitled to liberal construction of their pleadings. See *Hebbe v. Pliler*, 611 F.3d 1202 (9th Cir. 2010) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976); *Haines v Kerner,* 404 U.S. 519, 520 (1972) (same).

**The District Court Erred in Denying Iwai's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018.**

The District Court in its Order denying Iwai's First Step Act Motion reads as:

> On August 26, 2025, Iwai, [this time] appearing *pro se*, filed the present, third motion for compassionate release, asserting that his sentence should be reduced because (1) it is "grossly disproportionate to what would be imposed under current law"; (2) his original sentence was "driven by now-disfavored guideline enhancements" concerning methamphetamine purity; (3) he did not "use" a firearm in furtherance of a drug crime and, therefore, his sentence for possession of a firearm was improperly applied; and (4) his sentence is "unusually harsh" compared with similar offenders. Dkt. No. 255 at 17–26. Iwai further asserts that he exhausted his administrative remedies. *Id.* at 15. He

provides records reflecting that he filed requests for compassionate release with his prison's warden in June and July, 2025, on the grounds that (1) his parents were of advanced age and required his care; and (2) his continuing medical issues, which were "stabilized with self carry [sic] medicine for the last six years." Dkt. No. 255-1 at 2 & 7 (pdf pagination). Further records reflect that the requests were both denied by the warden within 30 days of filing. *Id.* at 3, 8–9.

On September 26, 2025, the Government filed its opposition, arguing that Iwai failed to exhaust his administrative remedies and did not show any extraordinary or compelling reasons for a sentence reduction. Dkt. No. 261. On October 20, 2025, Iwai replied, claiming that he exhausted his remedies because he "submitted a request" to his warden and "more than 30 days elapsed (or a denial issued)," without elaboration. Dkt. No. 262 at 4–5.

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." See 18 U.S.C. § 3582(c)(1)(B); see also *Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(I). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the [BOP] to bring a motion" on his behalf or 30 days has lapsed since the relevant warden received a request to do so;
2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

See 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement). The inmate bears the burden of establishing by a preponderance the requirements for a sentence reduction. See, e.g., *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); see also *Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), overruled on other grounds by *Ring v. Arizona*, 536 U.S. 584, 609 (2002).

The Government argues, *inter alia*, that Iwai has failed to show that he exhausted his administrative remedies. Dkt. No. 261. For the reasons that follow, the Court agrees.

As this Court explained to Iwai in its order denying his second compassionate release motion, Dkt. No. 216, exhaustion under Section 3582(c) is mandatory, see *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (per curiam) (noting that Section 3582(c)(1)(A)'s exhaustion requirement is a "mandatory claim-processing rule that must be enforced when properly invoked."). This Court therefore cannot overlook failure to exhaust. Id. at 1281 ("[A] district court may not . . . excuse a defendant's failure to satisfy that requirement over the government's timely objection."); see also *United States v. Ransom*, 859 F. App'x 58, 59 (9th Cir. 2021) ("[In *Keller*,] we made clear that a district court may not reach the merits of a compassionate release motion if the government has properly objected in the district court to the defendant's failure to exhaust."); *United States v. Trask*, 859 F. App'x 38, 38–39 (9th Cir. 2021) (rejecting argument that district court could excuse failure to exhaust for equitable reasons).

After an inmate submits a request for compassionate release to the warden of the institution in which he is housed, he may satisfy Section 3582's exhaustion requirement in two ways.

> First, if at least 30 days have "lapse[d]" since the inmate submitted his request to the warden and the BOP has failed to respond, then the inmate may file a motion in federal court and the court "may reduce the term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). This allows the warden a reasonable time to respond to the inmate's request, but it also prevents the warden from denying the inmate relief by simply refusing to respond. Second, if the warden denies the request within the 30-day period, the inmate must "fully exhaust[] all administrative rights to appeal." 18 U.S.C. § 3582(c)(1)(A). . . To that end, the inmate must "appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)." 28 C.F.R. § 571.63(a).

*United States v. Kazanowski*, 2020 WL 3578310, at *4 (D. Haw. July 1, 2020). Requiring exhaustion serves the dual purpose of providing the agency an opportunity to act first in an area in which it has expertise and of promoting judicial efficiency because the agency's decision-making process will either moot the issue or provide a useful record for the Court. *Id.* at *4 n.8 (citation omitted).

Here, the records that Iwai himself provides show that he did not exhaust. Although Iwai petitioned the warden for compassionate release on June 14 and July 7, 2025, Dkt. No. 255-1, Iwai has presented no evidence that he then appealed the warden's timely July 3 and July 19, 2025 denials through the Administrative Remedy Process. Iwai's reply seems to indicate that he believes that mere denial by the warden was enough to exhaust—if so, he is sorely mistaken. See *United States v. Hirano*, 2022 WL 1540230, at *3 (D. Haw. May 16, 2022) (holding that "the language of the statute plainly indicates that, under the circumstances here, the 'administrative right[] to appeal' must be exhausted" (quoting Section 3582(c)(1)(A))). Exhaustion of administrative remedies, given the Warden's timely denial, required Iwai to go through the entire administrative process, including the appellate process—he has failed to do so.

Moreover, even if Iwai's petition to the warden was enough, he would have still failed to show exhaustion because the grounds for release in

Iwai's administrative petitions and those in his current motion are not the same. In Iwai's requests to the warden, he claims that compassionate release is necessary due to his parents' advanced age and care needs and his own health conditions. Dkt. No. 255-1. Neither of these arguments appear in his present compassionate-release motion, which focuses instead on alleged flaws in sentencing. See Dkt. No. 255. Thus, at least as far as the record reveals, it appears that the Bureau of Prisons was never given the chance to actually review the grounds for compassionate release Iwai now presents—this alone constitutes a failure to exhaust. See *United States v. Gorion*, 2022 WL 867764, at *3 (D. Haw. Mar. 23, 2022) ("To properly exhaust under § 3582(c)(1)(A), an inmate is required to present the same or similar ground for compassionate release in a request to the [Bureau of Prisons] as in a motion to the court." (internal quotation marks and alterations omitted)); *Keller*, 2 F.4th at 1283 (noting that, among other reasons, defendant failed to exhaust because the grounds for the compassionate release motion were not reflected in the request to the warden).

The Government further argues that Iwai's compassionate-release motion fails on the merits. Dkt. No. 261 at 10–13. Because the Court has determined that Iwai failed to exhaust his administrative remedies, however, the Court "may not reach the merits" of his motion. *Ransom*, 859 F. App'x at 59; see also *United States v. Hirano*, 2022 WL 1540230, at *3 (holding that failure to exhaust leaves the court "unable to evaluate the merits of [the] compassionate release request" and so denying on exhaustion grounds alone). Accordingly, the Court denies Iwai's compassionate release motion on failure-to-exhaust grounds alone.

For the reasons set forth herein, Iwai's motion for compassionate release, Dkt. No. 255, is DENIED.

IT IS SO ORDERED.

DATED: December 19, 2025 at Honolulu, Hawaii.

See Doc. 263.

Here, Iwai contends that the District Court erred in its Order since Iwai has "compelling or extraordinary reasons for a sentence reduction," for the following reasons:

1. <u>First Step Act— Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)</u>

This motion is filed pursuant to the First Step Act of 2018, Pub. L. 115–391 (Dec. 21, 2018), which includes a range of provisions designed to reform sentencing, improve prison programming, reduce recidivism, and promote the effective reentry of incarcerated individuals. One of the Act's most significant changes pertains to the compassionate release provision in 18 U.S.C. § 3582(c)(1)(A), which allows a defendant to file a motion requesting a reduction in their sentence based on extraordinary and compelling reasons.

The First Step Act amended the sentencing modification procedures under 18 U.S.C. § 3582(c)(1)(A) by permitting defendants to file their own motions for a sentence reduction after exhausting administrative remedies, without needing a motion from the Bureau of Prisons (BOP). Importantly, the Act also reduced certain enhanced penalties under 21 U.S.C. § 851 for repeat offenders, expanded the safety valve provisions, and limited sentence "stacking" for certain firearm offenses under 18 U.S.C. § 924(c). Moreover, it retroactively applied the Fair Sentencing Act of 2010, which reduced the crack cocaine sentencing disparity.

Importantly, the First Step Act has also given rise to revisions to the Guidelines Manual and USSG § 1B1.13, which now incorporate a broader understanding of what constitutes extraordinary and compelling reasons for compassionate release. The 814 Amendment specifically added a new category for "unusually long sentences", which allows for sentence reductions where a defendant has served at least 10 years of imprisonment, and where the change in law or sentencing guidelines would create a

gross disparity between the sentence being served and the sentence likely to be imposed today.

**The New 2023 Amendment to U.S.S.G. § 1B1.13(b)(6) on Compassionate Release.**

In 2023, the Sentencing Commission issued a significant revision to U.S.S.G. § 1B1.13(b)(6), providing an express ground for compassionate release when a defendant's sentence is grossly disproportionate to what would be imposed under current law. The amendment specifically permits sentence reductions where:

> "The defendant is serving a sentence that is not otherwise covered under this policy statement and... the defendant is sentenced to a term of imprisonment that is, in the judgment of the court, significantly longer than the sentences imposed on similarly situated defendants and did not receive a reduction based on non-retroactive changes in law or sentencing guidelines."

This revision is particularly important for Iwai, as his sentence—imposed under outdated guidelines and with an improper enhancement—falls squarely within the scope of this provision. Iwai has already served a significant portion of his sentence, and his current term is disproportionately severe compared to those who are now sentenced under post-First Step Act guidelines.

Here, Iwai has already served more than ten years of his sentence, satisfying the threshold requirement under § 1B1.13(b)(6). The Ninth Circuit has recognized that extraordinary and compelling reasons for sentence reductions may arise from post-sentencing changes in law or policy, especially where a defendant faces a sentence that would be substantially shorter if imposed today. In *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022), the court reaffirmed that district courts may consider "non-retroactive changes in sentencing law" when evaluating a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Similarly, in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021), the Ninth Circuit made clear that § 1B1.13 is not binding on courts when defendants themselves move for compassionate release, and district courts are free to consider other factors—such as unjustly long sentences and sentencing disparities—as part of the "extraordinary and compelling reasons" analysis.

In this case, Iwai's lengthy sentence was driven by now-disfavored guideline enhancements—particularly those based on methamphetamine purity—which today would likely be minimized or eliminated under evolving DOJ policy and guideline amendments (including USSG Amendments 821 and 814). Had he been sentenced under current law, his sentence would be substantially shorter. Given that he has already served more than a decade, the disparity between the sentence imposed and what would be imposed today is sufficiently extraordinary to warrant relief under § 1B1.13(b)(6) and consistent with *Chen* and *Aruda*.

2. Methamphetamine Purity-Based Sentencing as an Extraordinary and Compelling Reason

The use of methamphetamine purity as a driver of offense level enhancements under the U.S. Sentencing Guidelines has come under significant criticism in recent years from both the courts and the U.S. Sentencing Commission. This approach—heavily relied upon at the time of Iwai's original sentencing—has led to disproportionately severe sentences, particularly for low-level, nonviolent participants in drug conspiracies.

The Sentencing Guidelines have historically imposed higher base offense levels for "actual" methamphetamine (i.e., pure meth) compared to mixtures. This is based on the assumption that purity equates to culpability or higher placement in a drug organization. However, this assumption has increasingly been debunked.

In *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), the Ninth Circuit acknowledged that high drug purity does not necessarily reflect greater culpability, particularly in methamphetamine cases. Street-level dealers or couriers may

unwittingly transport pure substances without knowing or controlling the purity level. As the court noted, "there is no necessary correlation between the purity of methamphetamine and the defendant's role in the drug operation."

Moreover, courts have found that such purity-based enhancements can produce unduly harsh sentences, particularly for individuals who are otherwise safety-valve eligible or play a minor role in the offense. In *United States v. Valle-Rivera*, 920 F.3d 1125 (8th Cir. 2019), the court criticized the Guidelines' meth purity distinction as outdated and overly punitive, and suggested that "courts are not bound to blindly follow guideline recommendations where they do not make sense in light of contemporary drug markets."

The U.S. Sentencing Commission has also acknowledged this issue. Amendment 821, which took effect in 2023, and the more recent Amendment 814 (2024), both reflect a growing institutional recognition that pure methamphetamine-based enhancements are problematic, particularly when they exaggerate a defendant's role or criminal intent. The Commission has now directed sentencing courts to more carefully consider mitigating role adjustments (§ 3B1.2) and expanded the scope of § 1B1.13 to include relief for those serving unusually long sentences that would be significantly shorter under today's practices.

In the Ninth Circuit, these evolving standards are actionable under 18 U.S.C. § 3582(c)(1)(A). In *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022), the court held that non-retroactive changes in sentencing law or policy—including guideline amendments and DOJ practices—can constitute extraordinary and compelling reasons for compassionate release. Chen explicitly recognizes the authority of district courts to weigh sentencing disparities that result from outdated and discredited guidelines.

Further, *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021), clarified that district courts are not limited to the criteria in the old § 1B1.13 policy statement, and may look to "changes in sentencing law, practices, and evolving standards of fairness" in assessing compassionate release motions.

Given these developments, Iwai's sentence, which was substantially enhanced based solely on the purity of the methamphetamine involved, is emblematic of the very type of disparity that Amendment 814 and recent case law seek to rectify. The fact that he has already served over a decade in prison—far longer than what would likely be imposed today under current guidelines and DOJ policy—constitutes an "extraordinary and compelling reason" justifying sentence reduction.

Allowing continued incarceration under a sentencing framework that the judiciary and Sentencing Commission have recognized as outdated, inequitable, and overly punitive would defeat the remedial purpose of § 3582(c)(1)(A) and the spirit of recent reforms.

3. Improper Application of 18 U.S.C. § 924(c): Gun Ownership and Collateral Use Do Not Constitute "Use" Under the Law

In this case, Byron Ebesuia submitted a sworn declaration stating that the firearm seized from Iwai was not Iwai's but instead belonged to Ebesuia's father and was temporarily transferred to Iwai as collateral for a drug debt. See Exhibit 2. Ebesuia made clear that Iwai never used, brandished, or carried the firearm during or in furtherance of a drug trafficking crime, and that the weapon served merely as a pledge until repayment was made. *Id.*

Despite this declaration, the court charged Iwai under 18 U.S.C. § 924(c)(1)(A) and imposed an additional 60-month consecutive sentence, concluding that he had "used" the firearm in connection with a drug offense. However, this legal conclusion is unsupported under binding Supreme Court precedent and controlling Ninth Circuit caselaw.

In *Watson v. United States*, 552 U.S. 74 (2007), the U.S. Supreme Court directly addressed this issue and held that a person does not "use" a firearm under § 924(c)(1)(A) when he receives it in exchange for drugs. The Court emphasized that "use" under § 924(c) refers to active employment of the firearm as a weapon—such

as brandishing, displaying, bartering, or firing it—and not mere receipt or passive possession, even if related to a drug transaction. *Watson* made clear that receiving a gun as part of a barter, collateral, or trade does not constitute "use" as contemplated by § 924(c).

This holding is dispositive here: even if the firearm was tied in some way to a drug transaction, Iwai did not use the weapon within the meaning of the statute. Rather, he received it temporarily—as in *Watson*—as a form of payment or security, not as a tool or weapon in furtherance of a drug crime.

The Supreme Court's earlier ruling in *Bailey v. United States*, 516 U.S. 137 (1995), also reinforces this principle. There, the Court held that "use" under § 924(c) requires active employment, and mere possession—even proximate or strategic possession—is insufficient. In *Bailey* and *Watson* combined, the Court established that "use" does not encompass situations where a defendant merely receives or holds a gun unless there is affirmative conduct employing the firearm as a weapon.

The Ninth Circuit has similarly cabined the reach of § 924(c). In *United States v. Belcher*, 259 F.3d 1073 (9th Cir. 2001), and *United States v. Ramirez-Rangel*, 103 F.3d 1501 (9th Cir. 1997), the court rejected § 924(c) liability where the firearm was present but not actively employed. And in *United States v. Lopez*, 477 F.3d 1110 (9th Cir. 2007), the court clarified that a nexus between the firearm and the drug trafficking offense must be shown—meaning the firearm must facilitate or be intended to facilitate the crime.

Here, the gun was not brandished, displayed, fired, or used to protect drugs or enforce transactions. Instead, it was received—passively—as collateral for a personal drug debt. This factual scenario falls squarely within *Watson*'s prohibition against stretching § 924(c) liability to cover mere receipt of a firearm.

In Iwai's 2019 appeal, Judge Jay Bybee dissented in part, raising serious constitutional and procedural concerns about the manner in which the firearm and related evidence were obtained. See Doc. 186. Specifically, Judge Bybee questioned

the legitimacy of the government's search and seizure strategy, focusing on the timing and justification for the warrant used to search Iwai's apartment.

Judge Bybee observed that authorities secured an anticipatory warrant conditioned on Iwai's receipt of a package—but then waited until after he had already returned home with the package before seeking and executing the warrant. In his dissent, Judge Bybee wrote:

> "It is unclear why the government would obtain an anticipatory warrant in the first place if they intended to wait for the triggering event to pass before taking action. Their actions appear inconsistent with the logic behind anticipatory searches."

Judge Bybee further concluded that law enforcement lacked facts establishing exigent circumstances, meaning that the warrantless entry and search of the residence was constitutionally questionable under Fourth Amendment standards. This not only casts doubt on the validity of the search that led to the discovery of the firearm, but also raises serious questions as to whether the enhancement under § 924(c) was tainted by a defective search.

Courts have recognized that § 924(c) enhancements must rest on constitutionally obtained evidence and lawful inferences. See *Ramirez-Rangel*, 103 F.3d 1501 (9th Cir. 1997) (reversing § 924(c) conviction where nexus to offense was lacking and firearm use was unsubstantiated).

Given the absence of active firearm use, the fact that the gun was merely held as collateral, the legal authority of *Watson* and *Bailey*, and Judge Bybee's strong dissent undermining the constitutional basis for the search and seizure, the imposition of the § 924(c) enhancement in Iwai's case is legally unsound and factually unsupported.

Moreover, this enhancement has added five years to Iwai's sentence—a sentence that would likely not be imposed today under current legal standards, DOJ policy, and Sentencing Commission amendments. The improper application of §

924(c) constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), especially where the error stems from government overreach and judicial misapplication of controlling law.

Therefore, the imposition of a 60-month consecutive sentence under § 924(c) in this case was legally erroneous and presents an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Courts in the Ninth Circuit, as reaffirmed in *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022), and *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021), are empowered to grant compassionate release based on unjust or improperly imposed sentencing enhancements, including those contrary to later Supreme Court rulings.

4. Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct

The need to avoid unwarranted sentence disparities among similarly situated defendants is a core principle of federal sentencing law. Under 18 U.S.C. § 3553(a)(6), courts are directed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This statutory requirement remains a central consideration even during sentence modification proceedings under 18 U.S.C. § 3582(c)(1)(A). As reaffirmed by the Ninth Circuit in *United States v. Wright*, 46 F.4th 938, 950 (9th Cir. 2022), a district court considering compassionate release must still evaluate the § 3553(a) factors, including disparity.

In Iwai's case, his sentence stands out as unusually harsh compared to other defendants convicted of similar nonviolent drug offenses who had no significant prior criminal history and demonstrated low recidivism risk. Iwai's sentence was driven, in large part, by outdated sentencing practices—particularly the use of methamphetamine purity to elevate his offense level and the erroneous imposition of a 60-month consecutive sentence under 18 U.S.C. § 924(c), even though he did not

actively use or employ the firearm (see *Watson v. United States*, 552 U.S. 74 (2007)).

By contrast, defendants convicted of comparable drug quantities today—particularly those with mitigating role adjustments or safety-valve eligibility—would receive significantly lower sentences. This is even more evident in light of Amendment 814 to the U.S. Sentencing Guidelines, which reflect modern views on proportional sentencing for low-level, nonviolent drug offenders and emphasize individualized assessments.

In *United States v. Chen*, 48 F.4th 1092 (9th Cir. 2022), the Ninth Circuit held that courts may consider non-retroactive changes in sentencing law and evolving policy trends when deciding motions for compassionate release. The court emphasized that stark sentencing disparities—especially those arising from guideline shifts and DOJ policy changes—can support a finding of "extraordinary and compelling reasons."

Moreover, Iwai presents a low risk of recidivism, which further undermines the justification for his continued incarceration. According to U.S. Sentencing Commission data, individuals with long terms already served, no history of violence, and strong institutional records are among the least likely to reoffend. Courts have acknowledged this fact in granting sentence reductions. For instance, in *United States v. Johnson*, No. 15-cr-125, 2020 WL 4340899 (N.D. Cal. July 28, 2020), the court reduced a lengthy drug sentence in part because the defendant had demonstrated a "remarkably low likelihood of recidivism" and the sentence far exceeded what would be imposed under current law.

Additionally, in *United States v. Jones*, 482 F. Supp. 3d 969 (N.D. Cal. 2020), the court granted compassionate release under § 3582(c)(1)(A), citing that "[e]xtreme sentencing disparities arising from changes in law and practice are antithetical to the goals of § 3553(a)."

In sum, Iwai's sentence today would likely be 10 years shorter had it been imposed under current standards and policy. His lack of violent conduct, low

recidivism risk, and positive rehabilitative record make continued incarceration both unnecessary and unjust, especially when compared to other defendants with similar conduct who have received significantly lesser sentences.

Failing to correct this disparity would violate the mandates of § 3553(a)(6) and the evolving jurisprudence under § 3582(c)(1)(A), which allows courts to realign outdated sentences with modern notions of fairness, proportionality, and rehabilitation.

Furthermore, Iwai was the beneficiary of a Third-Party Downward Departure Agreement that was signed by both the Assistant United States Attorney (AUSA), Mark Inciong ("Inciong") and his then fiancée, who agreed to cooperate with federal authorities in the apprehension of a fugitive. This cooperation was not theoretical or speculative; rather, it resulted in the successful identification, location, and arrest of the fugitive Cornelio Randolph ("Randolph"), her uncle, during a law enforcement operation in Las Vegas. Prior to her cooperation, law enforcement had failed to locate or apprehend Randolph. Her assistance—provided in direct reliance on an agreement to benefit Iwai—was critical to the success of the operation.

Despite this agreement, in signed form, and despite the AUSA's acknowledgment in the record that Inciong failed to file the appropriate Rule 35(b) motion in a timely manner, the court refused to grant the downward departure. Instead, Judge Watson mischaracterized the record by stating that Iwai had already received a reduction at sentencing based on this cooperation. In truth, the only reduction Iwai received was a standard three-level decrease under USSG § 3E1.1 of the Guidelines—for acceptance of responsibility and timely notice of intent to plead guilty—not for any substantial assistance or third-party cooperation.

This failure to honor the agreement and refusal to correct the error post-sentencing resulted in a sentence greater than was promised by the government and reasonably expected by Iwai, thereby violating his due process rights and creating a fundamental unfairness in the sentencing process.

The court's assertion that Iwai received a reduction for his ex-fiancée's cooperation is contradicted by the record. The three-point reduction he received was for acceptance of responsibility, as allowed under USSG §§ 3E1.1(a) and (b). There is no indication in the PSR or judgment that a downward departure under § 5K1.1 or Rule 35(b) was granted for substantial assistance—nor could there be, as no such motion was filed. Thus, the additional 10 years or more that Iwai continues to serve is attributable not to his conduct, but to a government oversight that the court has refused to correct.

The failure to honor a signed cooperation agreement, especially where the government acknowledges its own error and where the cooperation led to the arrest of a previously unapprehended fugitive, constitutes an extraordinary and compelling reason for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

In *Chen*, the Ninth Circuit confirmed that district courts may grant sentence reductions based on post-sentencing developments or circumstances outside the original sentencing calculus—including the government's failure to account for cooperation or material changes in how similar cases are now handled.

In this case, Iwai should not suffer the consequences of the government's admitted failure to file timely. The AUSA's verbal and written assurances, the signed agreement, and the successful law enforcement outcome all support the conclusion that a sentence reduction is not only justified but required to prevent a manifest injustice.

Accordingly, Iwai prays that his motion be granted.

## CONCLUSION

For the above and foregoing reasons, Iwai prays this Court reverse the denial of his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and First Step Act of 2018, based upon the fact that he has met the "extraordinary and compelling reasons" requirement, and release him to home confinement or hold a hearing as soon as possible.

## CERTIFICATE OF SERVICE

I certify that, on July 11, 2026, a true and correct copy of the above and foregoing Opening Brief for Petitioner-Appellant has been mailed via U.S. Mail, postage prepaid to Rebecca Ann Perlmutter, Assistant U.S. Attorney, Office of the U.S. Attorney, PJKK Federal Building, Room 6-100, 300 Ala Moana Boulevard, Honolulu, HI 96850.

BRYANT KAZUYOSH IWAI